Good morning, Your Honor. I'm James Wagstaff. I'm appearing on behalf of Big-D Construction Corporation. This expedited appeal arises in the crucible of a complicated construction context of the manufacture of a massive cheese factory, manufacturing plant in Lemoore, California. So I guess the question is, should the cheese stand alone, right? That is certainly one of the questions. It certainly should be California cheese, Your Honor. Let me say that the claims arise in California. Principal witnesses are involved in California, and these are interrelated contexts, and I think that's the key as we start our analysis of the venue. This is a venue clause that is specific to this contract. It is a clause that does provide for exclusive venue and jurisdiction in Colorado, except it has an express carve-out provision. And that express carve-out provision says, notwithstanding the choice of forum, if there are indispensable parties who can't be made party to the case in Colorado, we'll bring it where they can be made parties. Clearly, that would be California. Your Honor, the district court erred when it concluded that the only other parties were parties to whom there was some sort of indemnity, and that's not enough for indispensability. The pleadings tell us what's happening. If Your Honors look at the declaratory relief claim and the contract claim. This is a claim, if I said last night when I was practicing and murdered my family, I said, a Rubik's Cube. My kid says, too old-fashioned. You move one panel, the other ones change. So they say it's like whack-a-ball, where you go and you hit the frog and the other frog shoots up. But that's the facts of this case. This is a case where one claim, for example, Luprino and Big D saying, you owe us money, we owe you money, this is a cost-plus contract, and that's essential. Paragraph 5.1 and 8.1 of the contract say, the way the owner gets paid is on a cost-plus basis. The costs they incur get passed through to the owner. That's an essential ingredient and indicates why this is not simply an indemnity claim. UMM of California has a major $14 or $20 million claim. They are a subcontractor. And they're saying to Big D, because they're not in privity with Luprino, they're saying, you owe us extra money. If you look at 8.1.6, you'll see how it is, payments. Because Luprino made this job more difficult, and we incurred costs. If that cost passes through, then Luprino would owe it. Do I understand the record correctly that the lower court here ordered Luprino to post a bond? It did, after the fact, Your Honor, yes. Okay. But I mean, now, so all we're looking at is, instead of a mechanics lien case kind of an action, there's a bond posted. Why can't that case be heard in Colorado? In other words, you know, you don't have to worry about parties. You don't have to worry about the real property. I mean, obviously, we can't have a mechanics lien case for California property take place in Colorado or any other state. But now we're just talking about a bond. Why can't we – why don't we just ship it all off to Colorado? That's a good question, Your Honor. Let me see if I can answer it. The answer, as I see it, is, first, we take a snapshot of venue when the action's filed. We don't look to see whether parties move by the time we get up to this court. That's a starting point. At the time this action was filed, UMM was not subject to jurisdiction in Colorado. There's nothing in the record, given that's their burden, to say that they were. So UMM couldn't be part of that case. So imagine the scenario. I think this gets us there in my Rubik's Cube or whack-a-ball. Or if it's Rule 19, perhaps we call it inconsistent determinations and adjudications. Whatever you look at it, Your Honor. Let's suppose we go forward – UMM case goes forward, suit number one. And UMM says, you owe us X millions of dollars, right? Loprino would pass that – excuse me, Big D would pass it through Loprino. But now in a separate suit against Loprino, we don't get the benefit of collateral estoppel. We don't get the benefit of res judicata. That issue gets re-litigated all over again. If you don't have UMM, for example, in the same suit, and we're taking a snapshot of time of venue, they'll come here and say, well, UMM's in Colorado. That's not our issue today. Our issue is whether this venue clause was enforceable at the time it was heard. In this case, Your Honor, what would happen there? This is true for the other subcontractors as well. It's a pass-through contract. So that first – I don't understand how – what you're saying to me. This is a suit brought by Big D against Loprino. And others, yes, Your Honor. And you're contending that in a suit brought by Big D against Loprino, that UMM is an indispensable party? I am, Your Honor, yes. But you've just been giving me hypotheticals that are not that lawsuit. Excuse me. They are in the lawsuit, yes, Your Honor. No, but you've arranged the parties differently. No, Your Honor. I've brought the case where I can bring it, California. The question raised by the venue clause is, could – if I had brought it originally in Colorado, as I said, I must have done, could have I gotten UMM there? The issue in the clause is – No, but the question is whether they're an indispensable party under Rule 19 and would – such as to require dismissal. And I'm not convinced on that point. All right. Let me see if I can do my best to convince you. First of all, Your Honor, I want to say we're not sure it's Rule 19 because it's a contractual definition of indispensability. Yes. Stick with me for the moment. As I read the language, you tied it very tightly to Rule 19. Yes, Your Honor. I'll accept that. I've got my record sites and I'm happy to take that. I understand your argument. I understand. But for the present purposes, we're talking Rule 19. Fair enough. Fair enough. And the district court looked at it that way, too. So let's take it that way. Rule 19 talks about multiplicity of actions and facing the possibility of inconsistent verdicts. We all agree with that. It is, if you're teaching civil procedure, a rock-and-a-hard-place rule. If you have suit number one that could have a result and suit number two has a result which could expose you to an inconsistent adjudication, that party could be indispensable and we ask ourselves can they be joined on the second part of Rule 19. That's our starting point. So let's run the tape as they say it should have run. I mean, they're suing my client in Colorado now for not having even filed the suit in California. We're in Colorado where they say we should have brought it. UMM is not subject to the jurisdiction of Colorado. We know that. So the UMM suit goes forward separately. UMM sues my client and says or my client sues, as in this case, for declaratory relief because, Your Honor, the first cause of action is to declare all these rights. UMM is not part of that suit. So the UMM suit goes forward and my client is found to have a pass-through cost of $14 million. Now I go to Colorado. I say, hey, it's $14 million. You owe it to me. Loprino says in Colorado I'm not stuck by what that court did in suit number one. Loprino says we get to relitigate it. In that case, the jury or judge might conclude it's only $5 million or a dollar or zero. That is what Rule 19b is all about. The snapshot, Your Honor, I think I want to focus on is the claim they said, the venue they say we had to bring. Their position is it had to have been brought in Colorado. And we couldn't get UMM in Colorado at the snapshot of this action. And that's the reality. We take a snapshot of venue at that moment. Under that clause, that's what's meant. Your Honor, I ask the question, forgive me if it's rhetorical, but I'm asking for you to answer it. What was the purpose of that clause, the carve-out? What was it designed for, if not for this very situation? This is a contract involving multiple parties. I look at this building and I see all the interrelated works on the walls. That's what this contract was. Your delay caused this problem. What was the clause for? But I've got a problem with your argument, at least as it's so far been presented under Rule 19, and that is you're giving me hypotheticals of, well, what if UMM had brought suit against us, and what if they had recovered damages against us, which I then wanted to present as a pass-through. If we're talking what if, that what if is absolutely possible from the very moment you sign that contract. That means that this form selection clause has absolutely no meaning because the what if is possible from the beginning. No, Your Honor, it's not. There are lots of reasons why it's possible. But no, it's possible as soon as you sign a pass-through contract with subs, you've got that situation as a potential. Yes, Your Honor, and that's why my reading of the clause is that's what they meant. But under that reading, that swallows the entire form selection clause. Well, Your Honor, it doesn't. There might be a claim solely between my client for payment with Big D. Big D, and that would be in Colorado. There might be a hazardous waste issue that arises only involving my client and Lupreno. There might be a case involving safety indemnity, personal injury between parties. There could be lots of disputes that arise under this contract because, Your Honor, as you know, it's a very broad venue clause, anything related to the contract. Even though we have 20 minutes, it's going to run on us. Let me ask you a different question, if I may. Sure. If this were a 1404 transfer motion under Stewart, how do you fare? If this were a 1404 transfer motion? And putting to one side the carve-out. Assume for purpose of my question that it does not apply. No question that this would be in California, and let me tell you why. We know from Stewart that the mere fact of the form selection clause does not control what the Court can do in protecting public interest. We know that. That's the holding of Stewart. It's the holding of Curbo. It's the holding of this Court. So the question is, would the Court take into account the el- if you ignore the carve-out, if I might add, taking into account the form selection clause, would the Court say it should be in Colorado? Let me submit to you why it wouldn't. Yes, the form selection clause is, as the case law says, a rock in the pile. But what else do we have? We have California clearly being the locus of the suit. We have, Your Honor, Your Honor knows well, those of us who teach civil procedure know well 1404. The two principal things you look at are the interest of third parties and the interest of justice. The public interest set forth in Gulf Oil. What do we have? We have many, many witnesses, if this case goes in Colorado, who will only be appearing by videotape or reading. We have numerous subcontractors. We have numerous witnesses. We have the architect, the center of the case in some ways. We have the project manager. We have the property located in California. If we try this case in California, we'll have live witness in the stand and a much smaller number of videotape witnesses. Anybody who's ever tried a case knows the difference between a videotape witness and a live witness. But it is, if you'll excuse me for my 1995, the ginsu knife head has more because there's a view of the scene. The view of the scene is critical. My colleagues here who try construction cases will tell you to understand it. Your Honors, maybe you're like me. I'm a public guy. I'm a man in a phone booth. What's that construction place look like? The jury needs to see what the utilitor room looks like to see whether or not it was too crowded to have change orders done. This jury will go to that construction site. If the case is in California of public interest, not only is it far less expensive, it's going to happen. That is, Your Honor, under 1404, exactly what happens. Why is this a 1404 instead of a 1406? Good question. You started me in 1404. Let me see if I can switch. Yeah, yeah. Your Honor, you've shifted my footing, of course, because I believe it is a 1404 case. But I understand. And I'm accepting now for purposes of this argument that maybe under 1404 and under Stewart, it doesn't control and it stays in California. But would the answer be different under 1406? And why is this a 1404 instead of a 1406? Let me answer both those questions for the first one. Why is it 1404? It's 1404 because of Polizzi. Venue is proper here. This case was removed pursuant to a removal statute. This is not like other cases. The venue here is 1441. There is proper venue. That is, the venue set forth in the statute. What do you do with Judge Levy's opinion in Flake? Judge Levy's opinion in the Flake case? I don't have it on my mind, Your Honor. I'm sorry. Well, Judge Levy says this is a 1406 case. Okay. Well, let me tell you why I don't think it is. All right? Now I'm shadowboxing, but let me do it. I'll give you the guts of his reasoning, R. He says if it were just Stewart, this is 1404, but we view Stewart as essentially having been walked away from or even overruled by the later inconsistent case of Carnival Cruise Lines by the Supreme Court. I strongly disagree. I'll tell you why. Because you don't see where it is. How does Polizzi and Seaborg get reversed? Those are Supreme Court cases. They say removal is 14. District court judges know this. So the case gets removed due, and it must come from the county in which you're sitting. Venue is proper. But, Your Honor, let me not rely solely on Supreme Court cases. Let me answer your second question, which is if it were 1406, do we get there? Yes, we get there. 1406 simply says if it's improper venue, should you still nevertheless put it somewhere else? If the Court concludes there's improper venue, well, then obviously the case doesn't stay here, and that's why I win my – I hope I win my venue motion. Venue is proper because it's removed. Now the question – and because, as Your Honor knows from our briefs, they waived, in our view, improper venue by removing. You can't join a party and then say I don't want to be here. They chose Federal court. But putting that to one side, if Your Honor assumes no venue because of you don't agree with my carve-out, you don't agree with my removal issue, then it still gives the Court power. 1406 is also established by public and private factors. It's very important. Private factors are what we do as litigants and figure it out, et cetera. There are public factors. Where should this case be? And the Court is the guarantor. Like, the Court isn't a class action, the guarantor. As a guarantor of the protection of the public factors, RICO tells us, in fact, in that situation, you still have to protect public factors. Where is it? Because, Your Honor, it's just a – it's – you remember Renvoy. It's like Renvoy. If it goes to Colorado, it's going to come back. And the answer we ask ourselves is can this district court decide right then? And the answer is yes. Judge Coyle could have said, on balance, where should this case be? If we were playing a family feud venue game, nobody would pick anything other than California as the number one answer. In this case, in this case for all the context, the parties, the third-party witnesses, the view of the premises, judicial economy, so if it's 1406, the Court still must protect public interest factors. And Your Honor knows from Gulf Oil one of the most important public interest factors is, when we try that case, will they be in the witness chair or will they be read through deposition? That's one of the most important factors. And there's no question that we're going to have more California witnesses in this case, as we see it. So, Your Honor, I – there's one other reason why it's not enforceable. It violates public policy. It violates public policy. California public policy? Excuse me? California public policy? Yes, Your Honor. It violates public policy. What do you do with the first sentence of this provision of the contract that says we follow Colorado law? How does California public policy even come into the case? First of all, because the Jones case says you look at the public policy of the forum state. It's not a choice of law provision. Second, and more significantly, Your Honor, that clause would be illegal as well. If – first of all, we don't know there's a conflict. They've got to tell us there's a conflict. They haven't told us that. But if, in fact, the forum state's law doesn't apply to the forum selection clause, and because of that, you can get around California's public policy. Wait a minute. Let me interrupt. I'm just reading to you from Section 15.8. It says, The contract shall be governed by and construed in accordance with the laws of the State of California. End of sentence. Then you get jurisdiction of the venue. You say Colorado, Your Honor. Excuse me. The State of Colorado. I missed that. Sorry. I like that switch, but that's not what it says. Okay. I'm sorry I can't give that to you. Well, is there something wrong with that? I mean, was there some overreaching, some inequality of bargaining powers? Is there some reason we can walk away from this clause that very specifically says the Colorado law governs? Yes, Your Honor. I'll tell you why. Because that clause itself can be a violation of public policy. Let me analogize to Jones. Let's suppose the party has the same contract in a franchise agreement. And the first line says we're going to apply the law of Colorado. And the second line says, you know, no franchise agreements are enforceable. Right? California has a very strong public policy for cases that are filed in this State. This case was filed in California. In this State, that choice of law clause could be, and I'd submit is, if Your Honor interprets it that way, is a violation of public policy. Just as in Jones, because California has such a strong policy, we are not going to shifting to other States to get around our strong public policy. Remember, this case was filed in California. But the public policy that you're making is basically purely in the mechanics lien policy, correct? It is. A very strong public policy. And you're saying that the parties cannot agree to forego the right to mechanics lien? SAFCO couldn't be clearer, Your Honor. They cannot. No, but SAFCO does not say we agree to be governed by the law of Colorado. I understand. SAFCO doesn't say that in the least. I recognize that, Your Honor. I'm trying to argue that the public policy can overcome any term in a contract, including the choice of law term. But these are fully competent grown-up parties. You're right. We're not talking about a taker to leave a franchise contract. We're talking about grown-up parties negotiating a contract. They agree to be governed by the law of Colorado. That's right, Your Honor. It is. But grown-up parties, even with full freedom of contract, cannot contract away, whatever clause they use, contract away a public policy of the form of State. They can't. For cases filed in that State. The public – and, Your Honor, I think we know this – the public policy emanates from the forum State's rights, not from some State we look at by renvoi or referral. But, Your Honor, I agree with that, that this is adults, which is why I don't – without belaboring it, that's exactly what the indispensable party clause means. They were adults. They perceived and were able to predict what might happen here. This very interlocked rubic cube of a construction project, they – because, Your Back, of course, I asked rhetorically, what did they mean by that carve-out clause? They could have only meant – because, Your Honor, we have some parole. We know they didn't put it in their contract in confidentiality. They didn't think they needed it. We know that they don't put it in their contract with individual subs. The only contract it was in was on this milk processing plant, 475,000 square feet in California. And they understood, and I submit they understood the public policy, that in fact you cannot have a major construction case with interlocked transactions on affirmative claims where there might be inconsistent results. You can't have that in a forum that has nothing to do with where the property is located. If it were in Nevada or if it's in Sacramento or LaMoure, California, this case is a proper case in California. And they were adults, and that's why the carve-out clause has to mean, because there is no other meaning to give it. Your Honor, you can say maybe there aren't very many other types of disputes that would arise that would take the first paragraph, but there are. There are all sorts of disputes that arise that do not have interlocked transactions. This is a unique construction contract. The allegation here, and, Your Honor, I think that if there's anything that I would ask you to read, it would be the cause of action for declaratory relief. It tells us about the interlocked transaction. This is not where one person built the vent and another company built the windows and they're all sort of sitting at counsel's table. This is where the very essence of the lawsuit on a cost-plus contract is what you did caused me to spend more money and whose fault is it? And it's really, maybe it's a Sondheim song, side-by-side-by-side. They're all in the suit, all interlocked. Each result will have an effect on another, like flipping the Rubik's Cube. And that's why these adults put that clause. If you ask yourself this question and ask my adversary, why is the clause there at all if the only kind of situation where we're going to have indispensability would be a major subcontractor construction issue where there's plenty of examples? So, Your Honor, I see my time is up. I'd like to, if I could, have a minute or two for rebuttal. And, Your Honor, let me simply say that this is a case where you take a snapshot of venue at the time the action is considered, not based on information that took place now or six months ago. It's a snapshot rule for good reason. Thank you, Your Honor.  Thank you, counsel. Mr. Markham. Good afternoon, Your Honors. My name is Patrick Markham. I represent Loprino Foods Company. May it please the Court. I'm here today with General Counsel for Loprino Foods Company, Richard Russeth. And I wanted to respond to a few of the comments that were made by counsel to begin with. I had some things that I had prepared. But I do think it's important that some of the comments that were made be responded to right away. And, first of all, this concept of going to the 404 analysis, first of all, Judge Levy was, I mean, Judge Levy, excuse me, Judge Coyle was correct. A 1404 analysis is not appropriate here under the Bremen and the, I think it's the Schutte case that I referred to, which I think you referred to as the Carnival. Same case. Same case. However, notwithstanding that, I will tell you this. I am not only the appellate counsel standing before you, Your Honors, but I'm the trial counsel, and I'm tired. And the reason I'm tired is because I've spent weeks in Denver at depositions. I've spent weeks in Utah in depositions. And the reason why is because the one thing that's been sort of swept under the rug, and that is Big D is a Utah corporation. My client is a Colorado corporation. All of the witnesses from the parties in this case, that is, the party witnesses, are from out of State. Nobody is a California resident in this case. In fact, the longest deposition in this case, and I know this is outside the judicial record, but I'll just tell you right now, if a 1404 analysis was done, it would be a waste of time because, Judge, this is a case that doesn't necessarily live and breathe in the State of California. And if we were to decide that it's a 1404 case, should it be sent back to Judge Coyle for initial evaluation? That evaluation has not been done, so I would assume that if this Court decided that a 1404 analysis was appropriate, it would have to be remanded to Judge Coyle for further analysis. Okay. Now, what I'd like to do is I'd like to just go back to how this started out. We start off with a contract in the year 2000. I know the Court has read the briefs, and I'm not going to go through the briefs, but there are a couple of, there are about three major issues that are very important. The first one is, and I want to address the Court's point regarding the nature of this contract, and that is, and I go back to the Bremen analysis that they did at the time when carbon black was sort of the way that form selection clauses were looked at. And at that time, the Court said, look, this world isn't so provincial that we can't consider the fact that other courts can make rulings and determinations and rule on legal matters. And the thing that I thought was very important here, because there are certain key issues with respect to our legal system that we need to look at, and that is, is the language in the Bremen where it said the forum clause was a vital part of the party's agreement, and it would be unrealistic to think that the parties did not conduct their negotiations, including fixing monetary terms, with the consequences of the forum clause figuring prominently in their calculations. And with respect to that, clearly, if my client sat down with Big D up front, these are two large, sophisticated companies, and Big D said we can't live with that forum selection clause, there would have been further negotiations. They may not have been the contrary. Kagan.                         Big D is a sophisticated prime contractor, is a party to the prime contract, and specifically bargained with Luprino for inclusion. That sounds as though they asked for it. I'm sorry? I'm reading from your brief. Okay. There's a sentence at the bottom of page 47 that makes it sound as though it was Big D who asked for it rather than your client. No. Clearly, my client asked for the forum selection clause, Your Honor, and I think that simply because my client prefers the State of Colorado. I assume if Big D requested it, it would have been the State of Utah. But the one thing is that I would tell you, because one of the issues that has come up in the case, and that is the question of whether or not any ambiguities in the forum selection clause should be held against Luprino Foods Company. And what I would say to that is that argument was never raised below. There's no evidence on it. And I do know – oh, I'm sorry. Well, what I'm going to say is this is obviously a contract, and a contract clause is presented into between two sophisticated parties and so on. And you're saying, well, we've got to give effect to that. But against the background of the existing law, we know that if the Stewart v. Rico or RICO analysis were applied, it doesn't necessarily control. That is to say, it's only one of several factors that determines where this case is going to end up. Why is this not a 1404 case? This is – the reason why is this case is a 12B3 case based upon the – Well, if you'd say 1404 and 1406, I'd prefer – 12B3 is just the way you make the motion. Okay. The governing standard is going to be the statutory standard, 1406 or 1404. Yeah. My reading of the Ninth Circuit – this Circuit's decisions is that a case of this nature is a 1406 case. The Stewart case, my recollection was, was a 1391 – venue was based on 1391. And my recollection of that case, and the distinction was, is that where this case is removed and then a motion to dismiss is filed, then it's a 1406 case. And you say you're relying on our cases that this is a 1406. Which cases in particular? Referring to the Schutte case. The Schutte case? The Honorable Lyons case. And what in that case leads you to this conclusion? As I stand here right now, Your Honor, I can't specifically put my finger on it. Okay. Yes. I do want to go back to a point you made, Your Honor, my brief. I'm looking at it now. And the language in there that said that Big D bargained with Lapreno for inclusion in the forum selection clause in the prime contract. My reference there simply meant that these people sat down in a room, sat across the table, and the bargain was anything in that contract that they wanted to line out, redline or change. No. I misread it at the beginning, and I can see how that was. I mean, I'm not accusing you of sort of sneaky briefing. I just misread it. I'm sure that was to the extent that it had an implication that it was they who proposed it, it was unintentional.  Thank you, Your Honor. So what's the meaning of the second part of the clause? I'm sorry? What's the meaning of the second part of the forum selection clause? The notwithstanding language? Yeah. The notwithstanding language, Your Honor. I've seen a lot of construction contracts, and this is fairly unique. Yes. And again, this wasn't discussed below in terms of how that came into the contract, so I guess we don't want to get into in terms of who put that particular provision in there. But what I would say, Your Honor, is that that language certainly would involve a situation, for example, where there are indispensable parties for whatever reason. Let's assume for the sake of argument that you've got a California tort feeser and Big D, and they jointly commit a tort, and therefore, both of them are defendants on that particular tort. I think it would be very almost impossible where you've got a situation where you've got, let's say, where the liability is potentially joint, that those particular individuals can be tried in separate courts. That would be a case where this would apply. But that would be in the contemplation, the natural contemplation of the parties sort of generically. In a construction contract, isn't there some force to the argument that this type of clause was primarily designed to involve litigation that would necessarily involve subcontractors? Absolutely not, Your Honor. And let me explain why. And I would go back to one of the comments that were made before, and I made the comment to Judge Coyle at the district court, and that is the exception that would swallow the rule. We went through this, and Judge Coyle looked at the contract, how it was to apply. And as these folks pointed out, there are actually separate contracts. There's a prime contract which expressly says this prime contract creates no contractual relationship. It provides in there for the hiring of subcontractors. And it says in there if you do contract with a subcontractor, there is no contractual relationship between that subcontractor and this owner. The prime contract has basically our litigation with the prime contractor is this, Your Honor. There is an allegation that the prime contractor has owed money, and there's an allegation on our side that the prime contractor delayed the project. Those are direct contractual obligations that arise from that specific language between the prime contractor and the owner. There is nothing that would involve the subcontractor as far as we're concerned in that particular lawsuit. We cited the court to the hotel Rittenhour case, which basically says an indemnity action, and this was in Judge Coyle's order, by the way, that an indemnity action is not indispensable to the main action. And basically Judge Coyle ruled and said, look, you guys can have your action with the subcontractors in the State of California. You can have your action with the Prino Foods Company in the State of Colorado. But the one thing that was important that the judge found was that when you went in and negotiated and looked at this contract, you had to have contemplated that was going to occur. The format of this contract wasn't a mystery to Big D. Big D has a problem with it today, but when they entered into it, for instance, one of the great comments made in the Bremen case was, hey, it wasn't inconvenient to you when you entered into it. How can it be inconvenient to you to litigate there now? And by the same token, when they entered into this contract, they knew there were subcontractors, they knew there were suppliers, they knew the nature of the beast that they were dealing with, and if what they're saying is the existence of subcontractors, that just their existence makes this a case where they're was a nullity right from the get-go. But what about the actual case brought by Big D. in California? The actual case brought by Big D. in California named both Luprino and UMM. So in that case, why is UMM not an indispensable party? Indispensable and necessary, such as to require dismissal. Right. Your Honor, the action is brought in the State of California against UMM. As I recall, the action, I've been in the middle of it for two years, so I can't recall it very well. But the action that was brought in the State of California against UMM, there were two things. One of them was we need to bring all the lien claimants in. That's typical. If you have a lien, you have to sort out who has priority and all that type of thing. Yes, Your Honor. So you've got that piece of it. The piece that Mr. Wagstaff referred to was the declaratory relief action. And in a declaratory relief action, the same thing applies, and that is you've got a separate contract with separate obligations. It's a fixed-price contract between the subcontractor, University of Merrill Lynch, and Big D Construction. It's a different type of contract. It's a different animal altogether. We would literally be instructing a jury with two separate sets of jury instructions, and a jury would be sitting there looking at us like, okay, I've got this contract, that contract. How am I going to discern this thing out? And the fact of the matter is, is there are two wholly separate contracts. This concept that one bounces off the other, that changes, we went through that in the district court level. And I'm not saying that because the district court made that ruling, this court can't reverse it because we wouldn't be standing here if that weren't the case. But what I would say is we're looking at an abuse of discretion standard, and we looked carefully at the contract itself, and these two contracts aren't interrelated. They're just not interrelated. They're not interrelated in any way to discretion. Your client's liability, the Big D, is dependent upon their liability in turn to the subs. In the case that we are talking about, the Big D, Loprino Foods Company case, there is definitely a piece of that, Your Honor. Yeah. Yes, there is. And I wouldn't ---- It's been that way from the very beginning. It has been that way since the very beginning. And here's how a contractor, though, I mean, necessarily includes his subs. I mean, his claim necessarily includes the ---- I don't mean to genderize it, but its claim, its claim necessarily includes its subs because it's a material supplier. Yes, Your Honor. And what we're dealing with, well, there's University of Maryland. That's the other party that's out there. And what I would say, Your Honor, is this, is if University of Maryland and Big D Construction litigate a case and there is a judgment rendered, let's say, for $100, then Big D Construction then, at that point, has the right to then seek indemnity from Loprino Foods Company. In terms of timing their lawsuit, in terms of timing their lawsuit to have concluded the U.M. MPs before they go against Loprino Foods Company, that's something that, again, under Rule 19, the court can shape that relief to make sure that that works. But this concept that there would be a single lawsuit with all defendants all joined together, that's just been pulled out of whole cloth, as far as I know, because there was no testimony at the trial level. There was no briefing. There was no declarations. There was no nothing regarding it. Well, the parties intended to have this kind of serial litigation that just could go on all over the place depending on, I mean, it could go California, Utah, and Colorado then, I suppose. Well, yeah. And, again, we haven't gotten into this, but I have asked the Court to take judicial notice, and I have made a motion to dismiss on the ground that UMM joined the Colorado litigation. They're in the Colorado litigation. We're talking about this in hypotheticals, and I know that Mr. Wagstaff says you have to take a snapshot, but it was their election to join the Colorado litigation. And one of the things we talk about, these various subcontractors and all these people, and there's 18 litigants and so forth and so on. I've never seen it. I've never seen them. I've never seen a motion that people can't be joined. I've never seen a Rule 19 motion that a case needs to be dismissed. But the Rule 19 test is not whether someone can voluntarily submit to the jurisdiction of the Court, but rather whether jurisdiction can involuntarily be exerted over that person. And the fact that UMM might have decided on its own hook to join in a Colorado suit does not answer the question as to whether there would have been jurisdiction over them had they resisted it. In the ruling at the district court level, Judge Coyle assumed they could not get jurisdiction over University of Maryland. So I think that's a fact that's a given. So the fact that UMM in the Colorado suit might have decided to join is neither here nor there as to whether or not they're an indispensable party in a Colorado suit. Yeah, and the reason that I raise that is because that's the only person that they've ever talked about, and they joined the suit, and it seems to have mooted this appeal. But, no, as I'm reading the clause, the question is, are they an indispensable party, such as would require dismissal under Rule 19? And the fact that they might have voluntarily joined in the actual event in a Colorado suit doesn't change whether they're an indispensable party. I'm just trying to read the clause that you wrote. Yeah. Yeah, exactly. You're right, and I understand what you're saying now. If they are determined to be an indispensable party, then they're an indispensable party. I agree with that. Judge Coyle determined that they weren't at the lower court, but, yes, I don't disagree with that. I guess my point is, is that I'm, you know, dealing with what actually happened and really mooting an appeal is what I was referring to there. Yeah. Let's see. There were a few things that were covered, and now I think just simply because of the questions, what I want to do is just see if I can come cover a few things. If the Court has any questions, obviously I'll get them. But starting with the removal issue, one of the things that I wanted to point out to the Court on this removal issue, and that is that there is a situation that a lawyer has when he goes into a case like this, and that is you take a look at it and you say, well, on the State level, if I answer before I file my motion to dismiss based on improper venue, well, then I would have, then I'd potentially waive the right to do that. At the State level, under Rule 12, I mean at the Federal level, under Rule 12H, the same thing. In other words, I can't file my response of pleading, because if I do and I don't include an objection to venue, then I've waived it. So I look at those two things and we say, hey, why don't we take a look at it. We look at Lambert v. Kaiser in the First Circuit, and the case is dead on as far as the facts in this case. So one of the things that we did is we said, well, there's nothing in Rule 12H that says that there would be a waiver. So we go ahead and we take a look at Lambert v. Kaiser, and we want to make sure we don't want to have an implied waiver. So just to sort of use a belt and suspenders approach, I just put a footnote in my removal petition and say, hey, you guys, we're going to be moving to dismiss when we get to the Federal Court. The cases in this district, Tokyo Marine, I think it was ABA Aviation, I think it is, and then the Tasman case all follow. The Southern District, the Northern District, and the Central District all follow the Lambert case. A number of them call the law well settled. And a number of them even cited the Schwartzer and the Rudder Group and said that they agreed that in a case like this, removal is not a venue, the challenge of the venue is not waived in a removal action by the mere filing of a petition for removal. So I wanted to hit that issue. The second thing is that, and I'm kind of going out of order now and I apologize, and that is, oh, I know, on this public policy issue, there's something that's very, very critical. And this is really interesting because it never, ever came up until about the last page of the reply brief in this Court. And it's very interesting. And that is, is the California, the CCP, which I agree with the Court, California state law as far as that goes, or I don't agree, that's maybe a wrong statement. I believe California state law doesn't apply to this because Colorado law applies. But even if I go to Mr. Wagstaff's argument regarding public policy, and he made a citation at the end of his reply brief regarding, I think it's CCP section 410.42, it expressly states that a subcontractor entering into a contract with a general contractor, that if there's an enforcement selection clause to litigate outside the State of California, that that is, cannot be enforced. And I think it's very critical here. And the reason I say that is because we have a Utah general contractor. So the state legislature in the State of California has looked at this and said, look, the subcontractor little guy who is trying to, who is in California, who does a job, is going to be protected here. The difference being, and so if we were to take the public policy argument that Mr. Wagstaff's making, we're essentially making California law by expanding that to a place where the California legislature has already looked at it and said, no, we're going to limit its application only to subcontractors that are residents in the State of California. And I think that's a very critical point. We talked about the SAFCO case in terms of the public policy. And the SAFCO case doesn't stand for the proposition that if, well, basically if you look at SAFCO, SAFCO is the pay of paid case. And the important thing there is if I'm a subcontractor, the provision in the SAFCO case would basically make it so that if there's a liquid general contractor, and on the other hand, the owner doesn't pay that, say, multimillion-dollar general contractor, and I'm a subcontractor, if that general doesn't get paid, I don't get paid. And I think what you see, one of the things that you see sort of prevailing here, and that is that typically when statutes aren't enforced, it's because somebody doesn't have a remedy. It's just like Rule 19. If you're going to get picked out of court and not have way to recover, we're going to find a way to not allow that to happen under Rule 19. So with that, my time is up. Are there any other questions? Any further questions? Thank you, counsel. Thank you very much. We'll give you two minutes. Can you put two minutes on the clock? Put two minutes on the clock, yes. Thank you, Your Honor. Let me start off by saying this Court in Murphy at page 1138 said that when interpreting foreign selection clauses, you interpret them against the non --" against the moving party. In favor. All inferences in favor of the moving party --" a non-moving party. That's sensible here. In this case, this Court looks at it. You also interpret against the drafter. In the record, it is clear, it's in our papers, I can get the citation if Your Honor wants it, they drafted this contract, not surprisingly. You interpret against the drafter. With those two prisms of analysis in mind, we ask ourselves, what does that carve-out clause mean? It is unique to construction contracts. It is designed because we have an enmassive construction project, which is uniquely interlocked between them. This is not a case of simple indemnity. This is a pass-through contract. But isn't your argument that you're arguing on behalf of UMM, and UMM has now joined the you're saying, oh, no, venue's not proper because of UMM, and UMM says, we're in Colorado. We just joined that. And that is the niceties of the law, though, because we take our snapshot of whether UMM was properly in the first suit. The Hoffman v. Blaski case tells us we do not look to see where someone could have rebrought the action with their consent. We look to see where it could have been brought originally. In this case, look at the dec relief. My client is seeking a declaration between all these parties. How many cost-plus analyses in different lawsuits are we going to have? The parties contemplated it here. They didn't put it in a contract that didn't deal with the subcontractors. That's very helpful evidence. We're trying to reverse engineer. It's a unique clause. It has to have meaning. The first paragraph has meaning. There are other disputes they could have, maybe major disputes. Hazardous waste could be a pretty big dispute in which it would be in Colorado. Here, the parties intended this in this manner. Your Honor, UMM was indispensable. They have an affirmative claim based on pass-through. If they win that claim and costs are asserted that we have, my client has to pay, that will be an adjudication that my client will be stuck with vis-a-vis them, but won't have any benefit in when they have to pass it through. That's not indemnity. That's 5.1 and 8.1 of the contract. If you look at excerpt of record 77 to 80, you'll read those clauses. It's a unique contract. It's a cost-plus contract with a clause that took care of it. The parties contemplated it. Your Honor, let me close by saying two things. One, the public policy is violated. Let me make it this simple. If, in fact, my client was required, as they contend, to sue in Colorado, we cannot assert foreclosure rights for our mechanics lien. California law wouldn't allow us to do it. It must be filed in the county where it's located. And lastly, Your Honor, whether it's 1404, which I think it is for the reasons I've said, the clause doesn't apply, and removal creates venue under 1441 under Palisi. But 1404, 1406, the facts are present here in this case. This is a California-based case. There's no mystery here. There's none whatsoever. This is a major contract with numerous California subcontractors. Let me ask you a question, if I may. If we were to decide that this is a 1404 case, should we send it back to Judge Coyle for initial ruling on that question? Your Honor, perhaps sometimes you would. In Brown v. Board, they talked about remanding. And I'll tell you why in this unique case. This is not Brown v. Board. Let me give my analogy if I could, Your Honor. I didn't mean to. I know the shape. Let me see if I can get there. Sometimes appellate courts must reach issues when, if it goes back to trial court, we have problems with other cases. But let me say this, Your Honor. To answer your question, I think the record allows this Court, the record before this Court, read Mr. Hughes's declaration. It is unopposed. Your Honor, if they had submitted evidence to the trial court that Colorado was a more convenient forum, then I would remand. But you must take the record as you find it. Read Mr. Hughes's declaration in the trial court. It's at ER 45 and following. He submits what the facts and evidence are. They don't submit anything. Okay. Thank you. Okay. Thank you, Your Honor. Very good. Thank both of you for your arguments. The case, Your Honor, will be submitted, and we are in recess.
judges: Thomas, W. Fletcher, Mahan